UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

ROLANDE CUTNER,                                    Civil Action No..

                              PLAINTIFF,,          **COMPLAINT**

              -against-                            **JURY TRIAL DEMANDED**


THE LANTERN GROUP,
 ST. LOUIS HALL L.P.
SRO HOTEL THE ST. LOUIS,  a/k/a
THE ST. LOUIS HALL

319 REALTY SERVICES, LLP, and
319 WEST LLC., and
XYZ CORPORATION, (Said name
being fictitious, it being the intention of CUTNER
to designate any corporation having a legal interest in
the SRO  HOTEL THE ST. LOUIS


                    Defendants.



------------------------------------------------------------------x



## COMPLAINT



**FROM:** ROLANDE CUTNER         **TO:**  THE LANTERN GROUP, INC.
      60 Broad Street                 690 Eighth Avenue, 5th Floor
      35th floor
      Suite 3502
      New York, NY 10004              New York, NY, 10036
      Tel: (212) 847-2389             Tel: (212) 398-3073
      Fax: (646) 349-2240
      Cell: (646) 673-5521
      Email: Rolande@cutnerlawfirm.com

**TO** :  ST. LOUIS HALL L.P.
SRO HOTEL THE ST. LOUIS,  a/k/a
THE ST. LOUIS HALL
319 REALTY SERVICES, LLP, and
690 Eight Avenue, 5th Floor
New York, NY 10036
319 WEST LLC.a/k/a The Margules Family
319 West 94th street
New York, NY 10025

And

The Margules Family
29 Ocean Court,
Brooklyn, New York, 11223

And

A.R.M. CAPITAL RESOURCES CORP.
29 Ocean Court
Brooklyn, New York, 11223

And

XYZ CORPORATION, (Said name
being fictitious, it being the intention of
CUTNER to designate any corporation
having a legal interest in the SRO HOTEL
THE ST. LOUIS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------

**JUDGE KRAM**

**'07 CIV 8649**

ROLANDE CUTNER,

PLAINTIFF,

-against-

Civil Action No. ‾‾

**COMPLAINT**

**JURY TRIAL DEMANDED**

THE LANTERN GROUP,
 ST. LOUIS HALL L.P.
 SRO HOTEL THE ST. LOUIS,   a/k/a
 THE ST. LOUIS HALL

319 REALTY SERVICES, LLP, and
319 WEST LLC. and
XYZ CORPORATION, (Said name
being fictitious, it being the intention  of CUTNER
to designate any corporation having a legal interest in
The SRO HOTEL THE ST. LOUIS



Defendants.

-------------------------------------------------------x

## THE PARTIES

### A. PLAINTIFF

| | |
|---|---|
| **Name:** | **ROLANDE CUTNER** |
| **Street Address:** | **319 West 94th Street** <br> **Room#341** |
| **County, City:** | **New York, New York** |
| **State & Zip Code:** | **New York, 10025** |
| **Telephone Number:** | **(646) 673-5521** |

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

ROLANDE CUTNER,                                          Civil Action No..

                        PLAINTIFF,,                 **COMPLAINT**

            -against-                              **JURY TRIAL DEMANDED**

THE LANTERN GROUP,
 ST. LOUIS HALL L.P.
SRO HOTEL THE ST. LOUIS,   a/k/a
THE ST. LOUIS HALL

319 REALTY SERVICES, LLP, and
319 WEST LLC., and
XYZ CORPORATION, (Said name
being fictitious, it being the intention of CUTNER
to designate any corporation having a legal  interest in
the SRO  HOTEL THE ST. LOUIS

                        Defendants.

-----------------------------------------------------------------x


**THE PARTIES**

**A . PLAINTIFF**

    **Name:**               **ROLANDE CUTNER**

    **Street Address:**      **319 West 94th Street
                             Room#341**

    **County, City :**       **New York, New York**

    **State & Zip Code:**    **New York, 10025**

    **Telephone Number:**    **(646) 673-5521**

## B. DEFENDANTS

**1. Defendant No. 1** Name:          THE LANTERN GROUP, INC.

    Street Address:          690 Eighth Avenue, 5th Floor

    County, City:     New York, New York

    State & Zip Code:     New York, 10036

    Telephone Number:     (212) 398-3073

**2. Defendant No. 2** Name:          ST. LOUIS HALL L.P.

    Street Address:          690 Eighth Avenue, 5th Floor

    County, City:     New York, New York

    State & Zip Code:     New York, 10036

    Telephone Number:     (212) 398-3073

**3. Defendant No. 3** Name:          SRO Hotel THE ST. LOUIS, a/k/a
                          THE ST. LOUIS HALL

    Street Address:          690 Eighth Avenue, 5th Floor

    County, City:     New York, New York

    State & Zip Code:     New York, 10036

    Telephone Number:     (212) 398-3073

**4. Defendant No. 4** Name:          319 REALTY SERVICES, LLP

    Street Address:          690 Eighth Avenue, 5th Floor

    County, City:     New York, New York

    State & Zip Code:     New York, 10036

    Telephone Number:     (212) 398-3073 and

    Street Address:          319 West 94th Street

2

County, City :          New York, New York

State & Zip Code:          New York, 10025

Telephone Number:     (212) 678-7080

**5. Defendant No. 5**     Name: 319 WEST LLC. a/k/a The Margules Family

Street Address:               319 West 94th Street

County, City :          New York, New York

State & Zip Code:          New York, 10025

Telephone Number:     (212) 678-7080 and

AND ALSO          The Margules Family

Street Address:               29 Ocean Court , Brooklyn

County, City :          King, Brooklyn

State & Zip Code:          New York, 11223

Telephone Number:     (  )

**6. Defendant No. 6**     Name: A.R.M. CAPITAL RESOURCES CORP.

Street Address:          29 Ocean Court

County, City :          King, Brooklyn

State & Zip Code:          New York, 11223

Telephone Number:     (  )

**7. Defendant No. 7**     XYZ CORPORATION          [It being the intention of

CUTNER to designate any corporation having a legal interest in the SRO HOTEL THE

ST. LOUIS a/k/a THE ST. LOUIS HALL.]

3

## 8. BASIS FOR JURISDICTION

9. The basis for federal court jurisdiction of this case is a Federal Question.

10. The Basis for jurisdiction is a Federal Question because Plaintiff's right has been violated under the federal statutory Americans with Disabilities Act of 1990; and for civil rights claims under 42 U.S.C. §§ 1985.

11. The Court also has jurisdiction pursuant to 28 U.S.C. § 1367 for CUTNER's state law claims.

## VENUE

12. Venue lies on this District pursuant to 28 U.S.C.§ 1391 (b)

## THE PARTIES

A. PLAINTIFF:

13. ROLANDE CUTNER, ("CUTNER") is a Permanent Tenant in a SRO building located at 319 West 94th street New York , NY, 10025.

She has been a resident since 1994 and is paying a rent of $500 a month. She is a tenant in good standing and has accepted to be part of the Tenant Advisory Board since March 2007 regarding the premises 319 West 94th street New York, NY 1007 and to monitor closely the redevelopment plan of 319 West 94th street.

B. DEFENDANTS:

14. Defendant No. 1 thru No. 7 (collectively "The Lantern Group")

are a non-profit entity, intends to use public financing to carry out construction to alter, rehabilitate and renovate the Single Room Occupancy "SRO" Hotel

4

known as the St Louis Hall, in their capacity as Net Lessee of the Premises,
located at 319 Wet 94th street, New York, NY 10025.

15. The Lantern Group contemplates to carry the conversion of commercial
SRO into permanent affordable housing and claimed to have already developed ,
owns, and operates 11 buildings of permanent and affordable housing and promise
to provide on-site social services to tenants . [See leaflet from the Lantern Group
herein as Exhibit 1 (a)]

16. The Lantern Group wishes to convert a 6-story pre-war structure into a 9-
story monstrosity rebuilt as a massive state and city-funded supported housing
projects.

## PRELIMINARY STATEMENT OF CLAIMS

17. Plaintiff,  ROLANDE CUTNER ("CUTNER"), acting PRO SE, complaining of the
Defendants No. 1 thru No. 7  (collectively referred to as "The Lantern Group"), files this
discrimination action against  The Lantern Groups (defendants No. 1 through Defendants
No.7)  for violations of the American With Disabilities Act (ADA)  and violation of the
New York Human Rights Law, for age, ethnicity and physical disabilities discrimination.
18. Furthermore, CUTNER files this action for harassment and violation of New York
Department  of Housing and Community Renewal (DHCR) rules and regulations.
Violation of rules against  interference **by a landlord** or **anyone acting on behalf of the
landlord** with or disturbing the privacy, comfort or peace of the tenant in the occupancy
of a SRO .

5

**19.** In addition, CUTNER complaints of harassment from The Lantern Group and discontinuing services by The Lantern Group for the purpose of causing her, as "Permanent tenant", to vacate her room.(See list of Permanent Tenants in the SRO building herein as Exhibit 1 (b) ]

**20.** In addition to what precedes, CUTNER brings this action seeking injunctive relief, damages, and cost against The Lantern Groups for violation of CUTNER's rights to minimize the hardship of her relocation during the renovation of her room since the building located at 319 West 94th street New York NY 10025 , is in the process of being transferred from the former Owner, defendant No.5 , to The Lantern Group, a so-called charitable organization, for rehabilitation and operation for affordable housing, but in reality a private developer.

**21.** In addition, CUTNER complaints that several "C" violations in the section of the building where she lives as not been addressed by The Lantern Group's management, despite her numerous complaints.

**22.** As another or added point, CUTNER files this action for violations of the New York City Council local Law 19 of 1983 codified as New York City Administrative Code §27-198, requiring anyone altering a Single Room Occupancy (SRO) to obtain a Certificate of No Harassment from the Commissioner of the Department of Housing Preservation and Development (HPD) certifying that no lawful SRO residents has been harassed to move out in the thirty-six-month period prior to the application date, as a condition precedent to the Commissioner of Buildings approving plans for building alterations and issuing work permit.

23. Furthermore, CUTNER complains against The Lantern Group of two Common Law causes of action, namely (1) fraud, and (2) negligent misrepresentation..

## DISCRIMINATION
## UNDER
## THE AMERICANS WITH DISABILITIES ACT OF 1990

24. On or about August 15, 2007, defendant No. 1 through defendant No. 7 (collectively referred to as "The Lantern Group") violated CUTNER right under the American Disability Act of 1990 in refusing to have CUTNER received delivery of her laundry bag containing clean linen and delivery of her clothing and wearing apparels, cleaned by "Maxene Cleaners" 2526 Broadway, New York, NY 10025.

## FACTUAL ALLEGATIONS

## CUTNER IS A
## SERIOUSLY DISABLED 73 YEARS OLD WOMAN

25. CUTNER is a 73 years old woman, divorced, without children, a seriously handicapped and disabled person.

26. She suffers from Multiple Sclerosis, a neurological disease, since 1983. Her impairment substantially limits multiple major life activities such as walking and performing manual tasks.

Multiple Sclerosis is a neurological disease. It affects her walking and her bladder. She self-catheters ten to twelve times a day to eliminate urine since she is paralyzed from the bladder. See copy of letter from Neurologist Professor Etienne Roullet [Herein as

7

Exhibit 2 (a)] and copy of letter from Urologist Professor Gérard Amarenco  [Herein as Exhibit 2 (b)].

27. Because she was born in France on September 6, 1934, and worked in France as a lawyer, although she is an American Citizen since April 3, 1970 (i.e. Certificate of Naturalization # 9252005 under Petition #5759  granted in New Haven,  Connecticut on April 3, 1970) she enjoys free medical coverage from France  and is taking care of by French medical doctors. She goes very often to Paris, France to receive medical attention and treatment for her condition.

28. In addition, on April 1, 2004 she was run over by a truck in Queens, state of New York.

She was  hit hard, flew into the air before she came to a landing, knocked unconscious. She suffered broken ribs and a fracture pelvic and was hospitalized in Jamaica Medical Center in Queens for 27 days. [See copy of extract of the deposition of the non-party witness Alvin M. KING pursuant to the law suit **Rolande Cutner v. Bam's Towing & auto Body , Inc. and Anthony C. Noterile**  as Exhibit 3 (a)].

She received rehabilitation twice a week for one full year in 2004.

29. Further more, on March 9, 2007 she had a very serious operation in the lumbar spine and received 4 titanium metallic rods placed in her spine  and two bone grafts on vertebra L4 and L5.  [Herein copy of Certificate from French surgeon, Doctor  Frederic Jacquot as Exhibit  3 (b)].

30.  CUTNER is disabled within meaning of the Americans Disabilities Act of 1990 and suffers impairment to major life activity. She is placed at risk of falling if she carries anything and this high risk is   due to the nature of her condition.

"Major life activities" and "substantial limitation" are defined by the regulations of the New York Equal Employment Opportunity Commission as "functions such as caring for oneself, performing manual tasks, walking…"

They further define "substantially limits" as being "unable to perform a major life activity that the average person in the population can perform, or as being significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

CUTNER states that the Multiple Sclerosis plus the recent back surgery that she suffered in March 9, 2007 affect the way she walks. She has a limp that is very noticeable. She had to use leg brace. She has a tendency to trip or drag her feet and cannot carry anything.

The mobility problems (with respect to both walking and carrying) amount to a substantial limitation of CUTNER life activities.

Her condition is permanent and will not get better in the future or periodically subside to afford her temporary reprieve.

The evidence is more than sufficient to support a finding that CUTNER is disabled as defined in the first prong of the ADA definition and CUTNER is within the class of persons protected by the ADA.

**31.** She is a "Permanent Tenant" for having been living since September 1994 at the SRO Hotel St. Louis Hall, located at 319 West 94th street, room #341.

**32.** She is a Tenant in good standing and pays $500 a month for her room.

9

[See Annual Apartment Registration-2007- Building Registration ID Number 102933 – issued by the State of New York – Division of Housing and Community Renewal  herein as Exhibit 4 ]

33.  CUTNER is an attorney admitted in Paris, France and in New York and despite her disability, is working every day. Her office is located downtown Manhattan, 60 Broad Street, 35th Floor, Suite # 3502  New York, NY 10004.

34.  It takes her one hour from her residence 319 West 94th Street to go to her office by subway.

35.  CUTNER leaves her room every day at 7:00 A.M. and does not get home before 6 or 7:00 P.M.

36.  Because she is a lawyer and because she works in a very elegant office she must have her cloths cleaned and pressed every other day.

37.  Since September 1994 CUTNER had always her laundry bag and her cleaned cloths delivered  by "Maxene Cleaners" located at 2526 Broadway (94th street and Broadway) to her room at the St. Louis Hall (herein the "Premises") located  one and half blocks down 94th street between Riverside Drive and West End Avenue.

38.  Unfortunately, since the defendants (collectively referred to as "The Lantern Group") took over the Premises  under a net lease agreement with the former owner, (under information and belief  defendant No. 5) the loss of basic tenant rights has taken a dramatic down turn  for the worse.

39.  On or about March 4, 2006, under information and belief defendant Number 1 thru defendant Number 4  (collectively referred to as "The Lantern Group")  took over the SRO Hotel St. Louis Hall  under a NET LEASE  agreement with the  Owner of the

10

premises, said premises are located at 319 West 94th street, New York NY 10025, under

a deep discount, conducted minimal repair work, and , in conjunction with the Owner

319 West LLC , located at 29 Ocean Court, Brooklyn, New York 11223, caused to

harass, brutalized, and frighten, plaintiff CUTNER and others Permanents residents of

said SRO to make them leave the premises.

**40.** Because of her disability, CUTNER cannot carry herself any packages in a

DISTANCE approaching one and half block, nor she can carry her bag of clean linen,

together with the bundle of cleaned freshly pressed black jacket, wool crepe embroidered

V-neck top, black mixed wool trousers, black cardigan, and black jacquard coat .

However, CUTNER must wear such clean clothing to go to work every day in the Wall

Street area where her office is located.


**41.** On August 15, 2007, she was denied the basic right to have her clothing and laundry

bag delivered by the cleaners, to her residence: room #341 in the SRO Hotel St. Louis

Hall by representative of the defendants Number 1 thru Number 4 (collectively referred

to as "The Lantern Group".) (See copy of new rules enacted by The Lantern Group herein

as Exhibit 5 (a ) and 5(b)

**42.** Since March 4, 2006, The Lantern Group conspired with the Owner 319 West LLC

to create hostile and unpleasant conditions in the building, putting indirect pressure on

CUTNER and permanent Tenants to leave for good the premises.

**43.** On August 10, and on August 12, 2007 and again on August 15, 2007 The Lantern

Group enacted a new rule prohibiting delivery of packages to the Permanent residents of

said premises, contrary to the delivery system which existed since 1994.

(See copy of enacted new rules by The Lantern Group herein as Exhibit 5 (a) and Exhibit 5 (b)

**44.** The denial of the right to receive delivery of clean clothing and clean linen in CUTNER's laundry bag had a cumulative, demoralizing effect that discourage CUTNER from asserting herself within her work place.

**45.** This denial created physical, mental and emotional injuries, to CUTNER as well as emotional distress.

**46.** On August 15, 2007, again, The Lantern Groups was adamant not to allow CUTNER to have her laundry bag and cleaned cloths delivered to her room #341 at 319 West 94th street , New York, NY 10025 and refused repeatedly the delivery of her laundry bag and cleaned clothing.

**47.** For several weeks, The Lantern Groups turned away all delivery boys coming to the premises to deliver CUTNER's clean linen and clothing.

**48.** CUTNER was so traumatized by the harassment that she suffered serious emotional and physical consequences and became unable to perform her work properly.


**49.** On September 5, 2007 after pleading with The Lantern Group to accept delivery of her clean cloths but to no avail, CUTNER was obliged to leave her office located at 60 Broad Street, Suite 3502, New York, NY 10004, at 4:00 P.M. in order to reach "Maxene Cleaners" 2526 Broadway ( at Broadway and 94th street) at 5:00 P.M.

**50.** That was the only time when CUTNER could obtain a delivery boy from "Maxene Cleaners" who could walk with her from the store to CUTNER's residence at 319 West 94th street.(See copy of cleaners slip as Exhibit 6)

**51.** The prohibition to receive any delivery like packages, laundry bags, cleaned and freshly pressed cloths was a serious discrimination against CUTNER who is disabled and unable to carry cleaned cloths and laundry bags to her residence.

**52.** The consequence of this new rule enacted by The Lantern Group had a cumulative demoralizing effect that discouraged CUTNER from asserting herself in her workplace wearing cleaned, and freshly pressed cloths.

Because of verbal assault from The Lantern Group management's team against CUTNER and seen in this context, The Lantern Group who harassed CUTNER and discriminate against her, was doing more than annoying her. The Lantern Group reminded her of her vulnerability and made her hesitant to seek redress from The Lantern Group's management where she perceived the tension and the discrimination would be even greater in the future.

**53.** The prohibition of personal delivery of dry-cleaning and laundry toward CUTNER by The Lantern Group created a climate of intimidation and repression:

**54.** CUTNER being the target of discrimination and harassment by The Lantern Group went through a process of victimization, frequently blaming herself for having MS, for being disabled and doubting her own self-worth.

**55.** Furthermore, CUTNER asserts that she is entitled to, but has been denied a variety of services to minimize the hardship of her future relocation during the renovation of her room in the aforementioned SRO.

13

**56.** In addition, CUTNER asserts that this subtle harassment by The Lantern Group was designed to force her to move out to permit The Lantern Group to convert the SRO to more profitable uses.

**57.** In the same time, this new rule of "no delivery at the building" reinforces stereotypes of Permanent Tenants of SRO Hotel as "homeless, mentally ill, chemically abused patients , some with violent histories" (as described in leaflet distributed in the street by "concerned citizen" herein as Exhibit 7 ) and CUTNER could feel that the new rule enacted by The Lantern Group regarding "no delivery of personal packages and laundry bag and dry cleaning" accomplished informally what law against disabilities discrimination theoretically prohibit: discrimination because a person is disabled.

**58.** CUTNER subjected to this type of discrimination, endured degradation and hostility making it just than much harder to live in the building due to future renovation.

## EXEMPLES OF THE LANTERN GROUP'S SUBTLE HARASSMENT OF CUTNER AND EXEMPLES OF DISCRIMINATION AGAINST CUTNER

**59.** Since March 2006, The Lantern Groups' action has been geared to break CUTNER as well as other Permanent Tenants' morale.

The debilitating effects of such pressure are enormous.

(See copy of letters of protest from Permanent Tenants Nicolas Legrand regarding new rules for delivery of mail for instance as Exhibit 8 )

**60.** Severe, pervasive harassment of CUTNER as well as others Permanent Tenants and more particularly vulnerable old and disabled tenants created a hostile or intimidating

14

environment that caused some Permanent Tenants to leave the premises and look

elsewhere for housing.

61. Furthermore, since March 4, 2006, The Lantern Group's actions discouraged

CUTNER and other Permanents Tenants from seeking redress in the first place.

62. Since March 4, 2006, and up to date, The Lantern Groups caused the management

of the building to be so disruptive that it affected on the morale of CUTNER as well as

others Permanent Tenants.

63. Both CUTNER and other Permanent Tenants found their life and their work

disrupted by this subtle harassment from The Lantern Group , and this fact had have a

demoralizing effect on everyone within the range of it.

64. CUTNER found herself very often in a lose-lose situation in terms of relationship

with The Lantern Group's management and several employees of The Lantern Group.

65. CUTNER, victim of this subtle harassment, experienced emotional stress as well as

physical and work performance stress that affected the way she did her work.

66. Furthermore, any one living in the premises, like CUTNER, Permanent Tenants and

temporary Tenants as well, have been harassed and affected by the offensive conduct of

The Lantern Group.

For instance:

67. Since March 4, 2006, The Lantern Group has been enacted new rules and regulations

regarding urgent repairs for the building to harass CUTNER and Permanent Tenants as

well as Temporary Tenants. At first CUTNER wrote nicely to the management begging

to have necessary repairs performed. Nothing was done. (See Cutner' s letter dated June

1, 2006 as Exhibit 9)

CUTNER and other tenants were supposed to fill out "a form" to notify the management of urgent repairs needed in the common areas of the building but in 2006 and part of the year 2007 the forms were never available. CUTNER had to fight to obtain "the form" to order repairs. CUTNER had to "frighten to sue" the management in order to have " the form" located and delivered to her at the front desk. (See an example of "repair form" as Exhibit 10). The results ranged from abandonment of the claims to the wildly frustrating. In some days CUTNER had to make dozen of time consuming calls before finding someone from the management answering the management phone. The repairs were delayed by days or even weeks until the time CUTNER said she would sue the management.

In the worst cases, The Lantern Group 's management gave CUTNER incorrect information or made the process to obtain repairs too cumbersome to navigate. Even more frightening, some employees denied the existence of a "problem" regarding dirt in the elevator, or litter and garbage in the common areas, ignorantly professing that there was no such thing as "dirty or unclean bathrooms, kitchen or common hallways". Furthermore, employees demonstrated substantial or complete ignorance about how to obtain a low-cost set of brooms and brushes to clean.

Up to date, CUTNER must constantly monitor her behavior to determine whether she is "inside the new rules" or "outside the rules", like distribution of her mail or receiving her daily copy of her New York Law Journal for instance.

**68.** Subtle harassment from The Lantern Group creates a no-win situation for CUTNER.

16

If for instance, CUTNER enquires about her daily copy of her New York Law Journal who is missing, CUTNER can either complaint to The Lantern Group's management about the disappearance of the New York Law Journal copy or do nothing.

CUTNER loses either way.

If CUTNER says nothing, she reinforces the idea that CUTNER and Permanent Tenants have no right to receive their daily news papers, or , at the very least, accept to have lost any right to receive a daily newspaper,

If CUTNER objects, she reinforces the idea that she, as well as others Permanents Tenants are complainers and that their complaint should be dismissed..

In either case, CUTNER knows what The Lantern Group is looking for : just hoping that CUTNER and others Permanents Tenants will leave the premises.

**OTHER EXEMPLE OF DISCRIMINATION AGAINST CUTNER:**

**THE LANTERN GROUP FAILURE TO DELIVER A RECEIPT FOR RENT AND SECURITY DEPOSIT PAID.**

**69.** In 1994, CUTNER deposited $100.00 as a security deposit to the Riverside organization [a/k/a The Saint Louis Hall] with her check for $3,000 representing six months of rent at $500 a month for her room on the third floor, room #341. Since then, CUTNER paid regularly her rent every six months: i.e. $3,000 (See copies of some of her later checks-from June 8, 2004 to June 25, 2007-given to the Lantern Group as Exhibit 11.)

**70.** On June 1, 2006, CUTNER paid $3,000 by check representing her rent from June 3, 2006 to December 3, 2006 and received an invoice for $3,000. Unfortunately CUTNER's deposit in the amount of $100.00 was not reflected in this invoice.

**71.** On June 14, 2006 CUTNER protested by a letter addressed to the Management of The Lantern Group but to no avail. (Herein as Exhibit 12)

**72.** On January 5, 2007 CUTNER again wrote to The Lantern Group stating that on December 3, 2006 she paid $3,000 by check representing her rent from December 1, 2006 until June 3, 2007 and never received a receipt of her check, nor an invoice reflecting the $100 security deposit paid in 1994, but her protest was again ignored. (Exhibit 13)

**73.** On July 19, 2007 CUTNER wrote a letter to The Lantern Group explaining again that she was renting room #341 since 1994, that she paid a security deposit in the amount of $100.00 in 1994 that this security deposit was never acknowledged received by The Lantern Group nor that she receives an invoice about her rent paid. (Exhibit 14) In addition, CUTNER complained that her check # 2007 in the amount of $3,000 representing her rent from December 3, 2006 until June 3, 2007 was never cashed by The Lantern Group.

Further more, on June 25, 2007 CUTNER paid by check N# 2031, $3,000 To The Lantern Group representing her rent from June 3, 2007 to December 3, 2007 and again that check was not cashed.

**74.** On July 19, 2007 CUTNER, again complained by letter, to the Lantern Group, asking why her checks were not cashed by The Lantern Group. [Exhibit 14 (a)] On July 17, 2007 finally The Lantern Group cashed one of her checks. [Exhibit 14 (b).] It is clear that CUTNER suffered from the outright hostility of The Lantern Group Management toward her and was subject to this subtle discrimination. (See copy of correspondence from CUTNER to The Lantern Group herein sent by Email, regular mail,

and registered mail, herein as exhibits 12, 13, 14,) since the Lantern Group never answered their phones, were difficult to approach and when approached were nasty and assaulted CUTNER verbally with intimidating facial gesture. This conduct by the management was totally unreasonable and typically became important because it was designed to be offensive to CUTNER in a very subtle way.

CUTNER was taunted. The Lantern Group's management challenged her French accent in a mocking manner, and jeered at her.

Again the critical question was whether CUTNER was exposed to disadvantageous terms and conditions of tenancy to which other Permanents tenants were not exposed. The answer is "yes" because she was viewed as "so different" from the poor, mentally sick, helpless tenant of a SRO who can be pushed around, harassed, verbally abused, and generally says nothing!

## TYPE OF HOSTILITY AND DISCRIMINATION SUFFERED BY CUTNER FROM JUNE 2006 TO DATE:

75. This type of hostility has been occurring since June 2006 until now against CUTNER, because CUTNER was not traditionally a type of person that is generally living in a SRO hotel.

She is an American citizen but from French origin; she is speaking with an accent; she is disabled; she is a lawyer; she is 73 years old but still working, She is not afraid to complain. She complained when the common area are not cleaned, the community bathroom filthy, the community kitchen disgusting.

19

This type of hostility, gives rise to a claim of harassment and discrimination from The Lantern Group. This harassment was strongly publicized by outright hostile actions even when the situation involves very subtle harassment and discrimination.

This discrimination was base on personal harassment of CUTNER, being viewed as French by heritage, national, religious, linguistic and cultural heritage, French with the language and customs of the French: i.e. clean, fashionable, and up-to-date, and this intentional infliction of emotional distress totally independent of any statutes or governmental agencies raises **the common denominator of Common Law tort**.

The key question is whether CUTNER as a Permanent Tenant was exposed to harassment and disadvantageous conditions of tenancy to which the other tenants were not exposed because CUTNER was not a "traditional SRO tenant". The answer is YES.

A "traditional SRO tenant is generally viewed as "mentally ill, chemically abusing patients, some with violent histories " as explained in the leaflet distributed on the Street on September 4, 2007 by the "neighborhood in the nineties" (See Exhibit 7)

In the present case, CUTNER asserts that the answer is "Yes" : CUTNER was discriminated against by The Lantern Group.

## OTHER EXEMPLE OF DISCRIMINATION SUFFERED BY CUTNER BECAUSE OF HER ORIGIN.

**76.** Because CUTNER enjoys dual citizenship French and American citizenship, being born in France on September 6, 1934, and naturalized an US citizen in April 1970, she enjoys free medical coverage in France.

The maintain of her health requests that she goes to Paris, France, regularly to be attended by her neurologist, urologist, and more recently by the surgeon orthopedist who practiced surgery on her spine.

Subtle harassments took place in form of nasty remarks from The Lantern Group Manager because she was leaving for France and she had to write a letter to explain the reason of her multiple travels to Paris.

(See letter dated July 20, 2007 as Exhibit 15 )

## LOST OF SERVICES SINCE 2006

## ENACTED BY THE LANTERN GROUP

## TO HARASS CUTNER:

**The Lantern Group harasses CUTNER daily. This harassment comes in many forms but primarily falls within two categories: diminished services like the service state above and the total failure to maintain a clean, safe and an infestation free building.**

## 77. ELIMINATION OF TRADITINAL SERVICES OF DERATISATION

Since June 2006 The Lantern Group decreased services traditionally offered to SRO hotel tenants:

As of June 26, 2006 The Lantern Group addressed the bed bug infestation in the rooms located in the front part of the building by promising to retain the services of the Lithan Co. corporation (See description of the cure process as Exhibit 16)

The Lantern Group eliminated the services of the Professional extermination service

which has been available since 1994 to CUTNER and other Permanent Tenants but never

was able to implement the process described by the Lithan Co. company.

In a matter of fact **the extermination process** described by the Lihtan co. leaflet was **so**

**complicated** than no tenants ever called that company.

(See copy of the new extermination process proposed by the Lihtan Co. corporation

herein as Exhibit 17)

While The Lantern Group suppressed the coming of exterminator and promoted the

Lihtan Co. corporation, most Tenants including CUTNER without help and being disable

were unable to participate meaningfully in the preparation of their individual rooms for

the process described by the Lihtan Co. leaflet. Most tenants including CUTNER had

difficulty negotiating the process and it was totally unfair by The Lantern Group to

accuse Tenants including CUTNER not to have taking the opportunity to call the

proposed Lihtan Co. corporation.

Complaints from CUTNER gave rise to verbal assault from the management.

The Lantern group has conspired to limit services and deny basics requests

from CUTNER to have a clean common area in the third floor where is located her

room. Every time she complained verbally, The Lantern Group claimed that it provided

impartially, ethically and efficiently cleaning services. That was not true. The results

were clear, convincing and enraging because CUTNER knew that she did not have the

wherewithal to fight back and defend her position until the time came when she

understood that it was up to her to take action.