# MOTIVE AND OPPORTUNITY TO COMMIT FRAUD AND MISMANAGEMENT
# THE LANTERN GROUP IS NOT A NON-FOR-PROFIT ORGANIZATION COVENANTED TO PROVIDE LOW-INCOME HOUSING FOR CHARITABLE PURPOSE

## 132. CUTNER ALLEGES THE FOLLOWING:

(a) Management from The Lantern Group made false statements and wrongful non disclosure.

(b) The Lantern Group's Management had sufficient motive to commit fraud to raise the requisite strong inference of fraud or fraudulent intent.

(c) The Lantern Group misrepresented the inept background of the corporate executives in their department to New York City officials in order to obtain the massive state and city-funding for affordable housing projects.

## 133. THE LANTERN GROUP IS NOT THE SALVATION ARMY.

The Lantern Group is not like the Salvation Army or the Red Cross a Non for Profit Organization dedicated exclusively to charitable purposes.

## 134. The Lantern Group does not operate and does not maintain buildings exclusively for charitable purposes and therefore does not satisfy the requirements of the statutory exemption. Since March 2006 when The Lantern Group announced its plan to renovate the Saint Louis Hall it succeeded in forcing to move out all the illegal latinos- immigrants tenants from one residence to the Saint Louis Hall where The Lantern Group proceeded in March 2006 to rent to said illegal immigrants an unknown number of rooms (at least 30) for profit. The Lantern Group does not operated the Saint Louis Hall for charitable purposes.

135. On information and belief at least 30 illegal latino immigrants are renting room in the Saint Louis Hall and therefore CUTNER asserts that the Saint Louis Hall is not primarily operated for charitable purposes.

136. The Lantern Group after renovation will be completed will ordered to evacuate the SRO Permanent Tenants and the illegal latinos immigrant to operated the Saint Louis Hall for profit.

137. CUTNER assets that The Lantern Group dos not intend to operated the Saint Louis Hall primarily for **charitable purposes**. It does not intend to secure lodging and meals on a non-sectarian basis to working individuals of modest means and it is not engaged in charitable work as a primary operation.

138. On information and beliefs CUTNER asserts that some rooms at the ground level will be renovated to become offices and will be leased for commercial purposes. This fact will detract the primary charitable use of the Saint Louis Hall.

139. The Lantern Group is a fake charitable organization, is not engaged in charitable work as a primary purpose and is not like the Salvation Army for instance, created by an Act of the Legislature, in New York, in 1899, as a religious and charitable organization.

140. Further more, any profit generated from the building will not be channeled toward charitable cause.

141. CUTNER asserts that The Lantern Group is a fraud.

49

## ACTIONS FROM CUTNER AND OTHERS PERMANENT TENANTS TO STOP THE LANTERN GROUP

142. On August 21, 2007 CUTNER attended with other members of the Tenant Advisory Board of 319 West 94th street, the Hearing of the New York City Board of Standards and Appeals to oppose the actions of the Lantern Group and made a presentation.

143. After listening carefully to her presentation, the Chairwoman of the New York City Board of Standards and Appeals postponed the approval until September 25, 07 . She refused to give rubber stamp approval to the Lantern Group's presentation showing that even unfeeling public officials, are being suddenly not sure that public necessity requires the laying out of a new few floors on the top of an old building. The president set aside the determination and finding to September 25, 07.

144. On September 3, 2007, because the gross incompetence of The Lantern Group in relation to the management of the building located at 319 West 94th street, the Tenant Advisory Board voted 6-0 not to support the redevelopment of the 319 West 94th Street Premises on the ground that the more simple services like cleaning common area of the building and signing for package delivery, services which had been available to tenants during the 13 years that CUTNER has been a tenant at 319 West, have been unavailable to tenants in general and to CUTNER in particular.

**145.** On September 4, 2007, with other members of the Tenant Advisory Board of 319 West 94th street, CUTNER made a presentation before the Community Board 7 and begged the President not to approve the redevelopment of 319 West 94th street. Using the legal definition of harassment, CUTNER stated that she have been harassed by The Lantern Group daily.

**146.** CUTNER explained the loss of tenant's basic right under the current and future management of the building.

**147.** CUTNER expressed no confidence that the Lantern Group will negotiate in good faith a completed Memorandum of Agreement with the tenants.

**148.** Impressed by her presentation, and presentation of others, like Christopher Santee, a Member of the Tenant Advisory Board of 319 west 94th street (See the text of his presentation as Exhibit 25) and listening to others angry participants, the President of the Land Use Committee of CB 7 decided not to give a rubber stamp approval of the redevelopment of the building and postponed the decision to October 2, 2007.

**149.** The President of the Land Use Committee of CB 7 understood CUTNER very well when she explained that her harassment comes in many forms but primarily falls within two categories:

(a) diminished basic services like mail delivery and no acceptance of packages delivery and no acceptance of delivery of laundry bags and cleaned cloths from cleaners

(b) total failure to maintain a clean, safe and infestation free building.

**150.** In addition, CUTNER explained in open court that she have been shouted at, screamed at, laughed at and had to suffer verbal assaults from the management of the Lantern Group. CUTNER explained that, most of her letters have been ignored and stated that after the new policy regarding interdiction of laundry bag delivery and cleaned cloths, CUTNER was informed by "Maxene Cleaner" that its delivery boy carrying laundry bag and cleaned cloths has been turn down each time "Maxene Cleaners" delivery boys came to the building.

**151.** On September 4, 2007 facing the many angry voices from neighbors The Community Board refused to approve the redevelopment plan presented by The Lantern Group.

**152.** On September 5, 2007 The Lantern Group hastily put up a new agenda Regarding Package Delivery stating:

"The Lantern Group is developing a plan to accept packaged and deliveries for tenant with physical disability. We expect to develop a plan and put it in place no later than October 1."(Herein as Exhibit 26)

**153.** This lame effort only made the participant tenants in the Advisory Board present at the meeting even more angrier.

The discrimination between Tenants with disability and Tenants without Disability was not rational and the prohibition to receive packages was viewed again like a subtle daily harassment of Tenants.

**154.** CUTNER describes the prohibition to receive packages, and more specifically laundry bag and cleaned cloths from the cleaners like a constructive eviction.

## MISREPRESENTATION AND BROKEN PROMISES FROM THE LANTERN GROUP

**155.** Much has been made over during the summer of 2007 about the tenants attempt to have the Lantern Group address the needs of severely mentally ill patients who currently reside in the building.

On August 1, 2007 The Lantern Group promises CUTNER that within two weeks the tenants would receive a letter stating exactly how it would address this population. Except for a meeting on September 5, 2007 with vague promises to address the issues, CUTNER is still waiting for the Lantern Group to follow through on their promises.

**156.** Another broken promises and misrepresentation in its own plan Fact Sheet dated July 18, 2007, fact sheet that was presented to the Land Use Committee of CB &, the Lantern Group stated that there were supposed to be an individual hired to act as a Tenant Services Coordinator.

The Lantern Group promised and represented to CUTNER that Tenant Services Coordinator 's job would be to work with tenants throughout the relocation and construction. As of today it is only another misrepresentation from the Lantern Group. Where is this individual? Why has this person not be hired?

**157. On June 11, 2007 the Lantern Group promised to 13 tenants who came before the elected representatives and who asked for help that the Lantern Group will address a number of health and safety issues related to the building. It was only**

**another misrepresentation made to CUTNER and other tenants from the Lantern Group which failed to even attempt to cure the problem.**

**158.** CUTNER asserts that the Lantern Group has constantly refused to discuss with CUTNER and other Tenants, denied CUTNER and other Tenants making and reviewing strategic choices, not willing to give information to CUTNER and other tenants on the redevelopment plans, and enabling CUTNER and other tenants to discuss with the Lantern Group the significance and implications of the Lantern Group 's choice of new policy.

**159.** The restriction of communication from the Lantern Group, the silence of the Lantern Group management, a total ban on discussion of the future projects and relocation of certain tenants, the prohibiting discussions on a number of other topics as well, are an indication of the intended bad faith of the Lantern Group and are inextricably intertwined with the refusal of the Lantern Group to discuss the redevelopment plan for the building and more important, the future of the Permanent Tenants.

Thus a ban on discussing future relocation and redevelopment of the building does materially impede communications between the Lantern Group and CUTNER and the other Permanent Tenants.

Such a restriction on communication violates the legitimate right to know of CUTNER and other Permanent Tenants.

It is also a breach of fiduciary duty of the Lantern Group toward CUTNER and the other Permanent Tenants.

The Lantern Group demonstrated again its bad faith and promoted an unjustified restriction on communication between CUTNER and the "future landlord", The Lantern Group.

The Lantern Group again is trying to succeed to victimize CUTNER and other blameless tenants to make them leave the building.

### FIRST CAUSE OF ACTION

**160.** CUTNER reasserts and realleges paragraphs 1 through 159 as though fully set forth herein.

**161. CUTNER's right has been violated under the federal statutory Americans with Disabilities Act of 1990 as well as her civil rights, and she asserts her claims under 42 U.S.C. §§ 1985.**

**162.** The Lantern Group knowingly and intentionally caused CUTNER to be harassed and discriminated against her because of her disability and cause CUTNER serious injury as the proximate result of this discrimination.

**163.** These actions were taken deliberated and with discriminatory intend and with reckless disregard for CUTNER's rights.

**164.** As a direct and proximate result of these discrimination because she was disable, CUTNER suffered damages.

**165.** CUTNER suffered serious injury as the proximate result of this discrimination.

## SECOND CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS

**166.** CUTNER reasserts and realleges paragraphs 1 through 165 as though fully set forth herein.

**167. CUTNER's right has been violated under civil rights claims pursuant to 42 U.S.C. §§ 1985.**

**168.** The Lantern Group engaged in a pattern of discriminatory practices related to housing that resulted in a disparate impact to the detriment of CUTNER and residents of the SRO St. Louis Hall.

**169.** The Lantern Groups in enacting new rules for the building 319 West 94th street, was totally unjustified, and such pattern of actions constituted a conspiracy for the purpose of depriving CUTNER of the equal protection of the laws or of equals privileges and immunities of the laws of the United States, in violation of 42 U.S.C. 1985. Such activities constitute a pattern and practice of discrimination targeting individuals on the basis of their ethnic origin. These actions were taken deliberately and with discriminatory intent, with reckless disregard for CUTNER's rights.

**170.** Finally, such pattern of actions constituted a conspiracy for the purpose of depriving CUTNER of equal protection of the laws, or of equal privileges and immunities of the laws of the United States, in violation of 42 U.S.C. § 1982

171. As a proximate result of these discriminatory actions, CUTNER has suffered economic loss, mental anguish deprivation of civil rights and the prospective loss of her room in the SRO Hotel St. Louis Hall.

## THIRD CAUSE OF ACTION

## FRAUD

172. CUTNER reasserts and realleges paragraphs "1" through "171 " as though fully set for herein.

173. The Lantern Group knowingly and intentionally made false statements and omissions of material fact to CUTNER regarding the future development of the SRO 319 west 94th street, New York, NY 10025 specifically concerning but no limited to the development of studios apartments and CUTNER had a reasonable right to rely and in fact relied on The Lantern Group statements of fact and omission believing that her room would be converted in studio apartment when in reality the Lantern Group started to harass and misled her to force her to leave the premises.

174. As a direct and proximate result of these false and misleading statements and omissions, and CUTNER's reasonable reliance on these statements and omissions, CUTNER suffered damages.

## FOURTH CAUSE OF ACTION

**175.** CUTNER reasserts and realleges paragraphs "1" through "174" as though fully set for herein.

**176.** Violations of the New York City Council local Law 19 of 1983 codified as New York City Administrative Code §27-198, regarding altering a Single Room Occupancy (SRO).

**177.** CUTNER files this action for violations of the New York City Council local Law 19 of 1983 codified as New York City Administrative Code §27-198, requiring anyone altering a Single Room Occupancy (SRO) to obtain a Certificate of No Harassment from the Commissioner of the Department of Housing Preservation and Development (HPD) certifying that no lawful SRO residents has been harassed to move out in the thirty-six-month period prior to the application date, as a condition precedent to the Commissioner of Buildings approving plans for building alterations and issuing work permit.

**178.** As a direct and proximate result of these false and misleading statements and omissions, and CUTNER's reasonable reliance on these statements and omissions, CUTNER suffered damages.

## FIFTH CAUSE OF ACTION

**179.** CUTNER reasserts and realleges paragraphs "1" through " 178" as though fully set for herein.

**180.** CUTNER brings this action seeking injunctive relief, damages, and cost against The Lantern Groups for violation of CUTNER's rights to minimize the hardship of her relocation during the renovation of her room since the building located at 319 West 94th street New York NY 10025, is in the process of being transferred from the former Owner, defendant No.5, to The Lantern Group, a so-called charitable organization, for rehabilitation and operation for affordable housing, but in reality a private developer.

**181.** As a direct and proximate result of these false and misleading statements and omissions, and CUTNER's reasonable reliance on these statements and omissions, CUTNER suffered damages.

**WHEREFORE,** Rolande CUTNER respectfully requests that this Court :

    a. Rescind the contract of sale and NET LEASE entered into The Lantern Group and the previous owner 319 West LLC related to the subject premises 319 West 94th street;

    b. Order that the management agreement between Capital Ressources and 319 West LLC be declared void and unenforceable;

    c. Award accrual damages pursuant to the first and second causes of action in the amount of ONE HUNDRED THOUSAND DOLLARS

    d. Award statutory damages pursuant to the first cause of action in the amount of ONE HUNDRED THOUSAND DOLLARS

    e. Award punitive damages pursuant to the first and second cause of action in the amount of THREE HUNDRED THOUSAND DOLLARS

    f. Award CUTNER Rolande Cutner costs and expenses pursuant to all causes of action and

    g. Order all other relief deemed just and equitable by the Court.

DATED:    October 1, 2007

            NEW YORK, NY

---

ROLANDE CUTNER
Acting PRO-SE

ROLANDE CUTNER
60 Broad Street
35th floor
Suite 3502
New York, NY 10004
Tel: (212) 847-2389
Fax: (646) 349-2240
Cell: (646) 673-5521
Email: Rolande@cutnerlawfirm.com

60