UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ROLANDE CUTNER,                                        Docket No.:  07 CV 8649
                                                                             (LAK)(WM)

                                    Plaintiff,

                    -against-

THE LANTERN GROUP, ST. LOUIS HALL L.P.,
SRO HOTEL THE ST. LOUIS a/k/a  THE ST. LOUIS
HALL, 319 REALTY SERVICES, LLP, and 319
WEST LLC and XYZ CORPORATION (Said name
being fictitious, it being the intention of CUTNER to
designate any corporation having a legal interest in the
SRO HOTEL THE ST. LOUIS,

                                    Defendants.
-------------------------------------------------------------------x


## <u>MEMORANDUM OF LAW</u>

MIRANDA SOKOLOFF SAMBURSKY
SLONE VERVENIOTIS LLP
Attorneys for the Defendants
THE  LANTERN  GROUP,  INC.,  ST.  LOUIS  L.P.  and  319
REALTY SERVICES, LP
The Esposito Building
240 Mineola Boulevard
Mineola, New York 11501
(516) 741-7676
Our File No.: 07-636

Of Counsel:
        Adam I. Kleinberg
        Melissa Holtzer

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT .................................................................................................................. 4

POINT I

DISMISSAL OF PLAINTIFF'S DISABILITY
DISCRIMINATION CLAIM IS WARRANTED ........................................................... 4

A.    PLAINTIFF'S ADA CLAIMS ARE PROCEDURALLY BARRED ............................. 4

B.    THE RECORD BEFORE THE COURT ESTABLISHES
      THAT DEFENDANTS PROPERLY RESPONDED TO
      PLAINTIFF'S LANDLORD/TENANT COMPLAINTS ........................................... 5

1. Plaintiff's Allegations Regarding the Delivery of Packages ................................... 6

2. Plaintiff's Allegations Regarding the Overall Condition of the
   Building ................................................................................................................. 8

3. Plaintiff's Security Deposit .................................................................................. 8

POINT II

PLAINTIFF'S CIVIL RIGHTS CLAIMS MUST FAIL ................................................. 11

A. THE LANTERN GROUP IS NOT A STATE ACTOR ................................................. 11

B. PLAINTIFF'S CONSPIRACY CLAIM FAILS ON THE MERITS ................................ 12

POINT III

PLAINTIFF CANNOT ESTABLISH HER FRAUD CLAIM ........................................ 16

POINT IV

THE DEFENDANTS DID NOT VIOLATE NYC ADMIN. CODE § 27-198 .................. 19

**POINT V**

**PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF IS
DUPLICATIVE OF HER STATE COURT PETITION** ........................................................ 20


**POINT VI**

**ABSENT ANY ALLEGATIONS AGAINST ST. LOUIS L.P. AND 319 REALTY SERVICES, L.P.,
THE CLAIMS AGAINST THEM  SHOULD BE DISMISSED** .............................................. 22

**POINT VII**

**IN THE ABSENCE OF FEDERAL CLAIMS, THIS COURT SHOULD
REFRAIN FROM EXERCISING ITS PENDENT JURISDICTION** ......................................... 22


**CONCLUSION** ....................................................................................................... 23

## TABLE OF AUTHORITIES

Cases

*Alfaro v. City of New York*, 2007 WL 258173 at p. 7 (S.D.N.Y. 2007) ....................................... 13

*Atia v. New York City Housing Authority*, 2002 WL 398812 at p. 3, f.n. 5 (E.D.N.Y. 2002)........ 6

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). ..................... 17

*Banque Arabe et Internationale D'Invetissement v. Maryland Nat. Bank*, 57 F.3d 146, 156
(2d Cir. 1995)................................................................................................................... 18

*Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir. 1997) ................................................................ 13

*Bueno v. City of New York*, 2007 WL 1062959 (E.D.N.Y. 2007) ................................................ 11

*City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)................................... 14

*Curtis v. DiMayo*, 46 F.Supp.2d 206, 215 (E.D.N.Y. 1999) ........................................................ 21

*Doe v. Pfrommer,* 148 F.3d 73, 83 (2d Cir. 1998).......................................................................... 6

*Green v. City of New York*, 465 F.3d 65, 74 (2d Cir. 2006) .......................................................... 5

*Hunt v. Enzo Biochem, Inc.*, 530 F.Supp.2d 580, 593 (S.D.N.Y. 2008)....................................... 17

*Indep. Housing Services of S.F. v. Fillmore Ctr. Assoc.*, 840 F.Supp. 1328, 1344
(N.D. Cal. 1993).................................................................................................................. 5

*Jones v. Alfred Mayer,* 392 U.S. 409, 413 (1968) ........................................................................ 12

*Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000). ................................................................. 19

*Knight v. City of New York*, 303 F.Supp.2d 485, 501 (S.D.N.Y. 2004) ....................................... 11

*Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) .............................................................. 23

*Nat'l Congress for Puerto Rican Rights v. City of New York*, 75 F.Supp.2d 154, 168
(S.D.N.Y. 1999). ............................................................................................................... 13

Plyler v. Doe, 457 U.S. 202, 216 (1982)....................................................................................... 14

*Reid v. Zackenbaum*, 2005 WL 1993394 at p. 4 (E.D.N.Y. 2005) ................................................ 5

*Rodriguez v. City of N.Y.,* 197 F.3d 611, 618 (2d Cir. 1999)............................................................ 6

*Romer v. Morgenthau*, 119 F.Supp.2d 346, 363 (S.D.N.Y. 2000) .................................................. 12

*Ruhling v. Tribune Co.*, 2007 WL 28283 at p. 15 (E.D.N.Y. 2007)................................................... 9

*Scaggs v. New York Dept. of Educ.*, 2007 WL 1456221 at p. 16, f.n. 14 (E.D.N.Y. 2007) ........... 5

*Schindler v. Schiavo*, 358 F.Supp.2d 1161, 1164 (M.D. Fla. 2005); *aff'd* 403 F.3d 1289
(11th Cir. 2005)............................................................................................................................ 4

*Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)................................................ 21

*Tasini v. New York Times Co., Inc.*, 184 F.Supp.2d 350, 356 (S.D.N.Y. 2002).......................... 22

*Thompson v. Midland Marine Bank*, 198 F.3d 235 (2d Cir. 1999)................................................. 17

*Watson v. Jones*, 80 U.S. 679 (1871).......................................................................................... 21

*Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) ...................................................................... 12

*Webb v. Goord*, 340 F.3d at 111 ................................................................................................. 13

*Yisrael v. Per Scholas, Inc.,* 2004 WL 744485 (S.D.N.Y. 2004) ................................................. 12

*Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)........................................................ 14

## PRELIMINARY STATEMENT

Defendants THE LANTERN GROUP, INC., ST. LOUIS L.P. s/h/a ST. LOUIS HALL L.P., and 319 REALTY SERVICES L.P. s/h/a 319 REALTY SERVICES LLP submit this Memorandum of Law in support of their motion to dismiss plaintiff's Complaint, which alleges the following causes of action: 1) violations of the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101, et seq.); 2) violations of 42 U.S.C. §1985; 3) a state law claim for fraud; 4) a violation of New York City Administrative Code §27-198; and 5) a request for injunctive relief, specifically, the rescission of contracts pertaining to the ownership and management of the apartment building in which she resides, located at 319 West 94th Street, New York, New York 10025. It is respectfully submitted that for the reasons set forth herein, as well as in the accompanying moving papers, all of plaintiff's claims must be dismissed as a matter of law.

As fully set forth below, plaintiff's own admissions dictate that her claims fail as a matter of law. While plaintiff claims to have been discriminated against and deprived of her civil rights, she concedes that she was treated the same as every other tenant, and the Record before the Court confirms that defendants consistently investigated and ameliorated any complaints that plaintiff reported. Additionally, while plaintiff alleges that the defendants violated a New York City statute requiring that they file a Certificate of Non-Harassment prior to renovating the building, she concedes that, as non-profit corporations, the defendants are exempt from this requirement. Further, while plaintiff seeks damages for defendants' allegedly fraudulent cessation of the renovation of the building, she concedes that she has simultaneously filed a lawsuit in the Supreme Court of the State of New York, New York County, to stop the renovation of the building. As such, plaintiff's own admissions mandate that her claims be dismissed as a matter of law.

1

We further note that while plaintiff is appearing *pro se* in this matter, she is in fact an attorney admitted to practice before this Court. Thus, plaintiff should have been well-aware of the elements needed to prove each of her claims prior to filing, and should have been aware that she cannot state a claim as to any of the cause of action she brought before this Honorable Court. In fact, a review of plaintiff's Complaint and her subsequent deposition testimony confirms that plaintiff simply seeks to use this federal court as a forum to express her displeasure with the proposed renovation project and her anticipated new neighbors in the building. While plaintiff has recklessly made allegations of discrimination against the defendants, her own deposition testimony leads to a conclusion that, if anyone, it is plaintiff who takes issue with certain individuals potentially living in the building. In any event, all of plaintiff's causes of action are frivolous and disproved by the Record before the Court. We respectfully submit that defendants are entitled to summary judgment, along with an award of costs and sanctions for plaintiff's baseless pursuit of these not-for-profit corporations in multiple courts.

## STATEMENT OF FACTS

A complete statement of the facts and circumstances surrounding this action is provided in defendants' accompanying Local Rule 56.1 Statement of Undisputed Facts dated September 5, 2008. Accordingly, they will not be repeated here. The Court is also respectfully referred to the September 5, 2008 Declaration of Melissa Holtzer (hereinafter referred to as the "Holtzer Dec.")[1] and the exhibits attached thereto, for a recitation of the relevant facts.

---

[1] Copies of all exhibits referenced herein are attached to the Holtzer Declaration.

We note that while plaintiff's allegations refer to the defendants collectively as "the Lantern Group," there are in fact three different not-for-profit corporations that have been named as defendants who are related to the maintenance and proposed renovation of St. Louis Hall.[2]

In this regard, The Lantern Group, Inc. is a not-for-profit corporation that, through affiliated entities, owns and operates buildings that provide housing to low income families and single adults living with special needs. *See* Exh. D at ¶ 2. 319 Realty Services L.P. is a limited partnership responsible for the management of the St. Louis Hall. *See* Exh. D at ¶ 4. St. Louis L.P. is a limited partnership that was formed for the sole purpose of owning St. Louis Hall after the proposed renovations have been completed. *See* Exh. D at ¶3. Plaintiff wholly fails to distinguish these entities in any fashion, either in her complaint or deposition testimony, simply referring to them collectively as "the Lantern Group." For the Court's convenience, we will do the same as to the majority of this motion, as plaintiff's allegations require us to do so. However, we note that, as the renovation of St. Louis Hall has not yet been completed (as discussed herein), St. Louis L.P. has not played any role in the management of St. Louis Hall.

---

[2] While plaintiff's Complaint in this action identifies 319 West LLC as a defendant, plaintiff has failed to timely demonstrate service of the Summons and Complaint on said entity. Not surprisingly, 319 West LLC has not entered an appearance in the action. As the Court's file will reflect, plaintiff's motion for a default judgment against 319 West LLC was denied by the Court

ARGUMENT

POINT I

DISMISSAL OF PLAINTIFF'S DISABILITY DISCRIMINATION
CLAIM IS WARRANTED.

A.    PLAINTIFF'S ADA CLAIMS ARE PROCEDURALLY BARRED.

Plaintiff's First Cause of Action generally alleges a claim under the Americans with Disabilities Act ("ADA"). However, plaintiff fails to specify under which Title of the ADA she seeks relief. As set forth below, plaintiff is unable to proceed under any provision of the ADA.

Title I of the Americans with Disabilities Act prohibits disability discrimination in employment. *See* 42 U.S.C. §12212. Since plaintiff does not allege that she is an employee of any of the defendants, or that she submitted an application for employment with any of the defendants, Title I of the ADA simply does not apply.

Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be…denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *See* 42 U.S.C. §12132. Under the ADA, a "public entity" is defined as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of the State or States or local government; and (C) the National Railroad Corporation, and any commuter authority." *See* 42 U.S.C. § 12131. Title II's definition of "public entity" does not include private corporations, such as the defendants, even where the corporations accept federal funding. *See Schiavo ex. rel. Schindler v. Schiavo*, 358 F.Supp.2d 1161, 1164 (M.D. Fla. 2005); *aff'd* 403 F.3d 1289 (11th Cir. 2005); *stay denied* 544 U.S. 957 (2005) (hospice that received federal funds does not constitute "public entity" under Title II of the ADA); *see also Green v. City of New York*, 465 F.3d 65, 74 (2d Cir. 2006); *Scaggs v. New York Dept. of Educ.*, 2007 WL 1456221 at p. 16, f.n. 14 (E.D.N.Y.

4

2007). Here, plaintiff can proffer nothing more than her own unsupported speculation as to the potential provision of funding from the City of New York to the Lantern Group. *See* Exh. E at pp. 37-38. This is insufficient for the purpose sought.

Here, defendants are all not-for-profit private corporations and do not constitute "public entities" as defined by Title II of the ADA. *See* Exh. D at ¶¶ 2-6. As such, Title II of the ADA does not apply to the plaintiff's claims against the defendants.

Nor do plaintiff's claims falls within the purview of Title III of the ADA. Title III of the ADA provides that, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of . . . any place of public accommodation. *See* 42 U.S.C. § 12182. However, places of residence, such as residential apartments, do not constitute places of public accommodation. *See e.g. Reid v. Zackenbaum*, 2005 WL 1993394 at p. 4 (E.D.N.Y. 2005) *citing Indep. Housing Services of S.F. v. Fillmore Ctr. Assoc.*, 840 F.Supp. 1328, 1344 (N.D. Cal. 1993). Since plaintiff is alleging discrimination with regard to the maintenance of, and services provided by, a place of residence, she cannot state a claim against the defendants under Title III of the ADA.

Accordingly, plaintiff cannot state a claim under the ADA.

**B.    THE RECORD BEFORE THE COURT ESTABLISHES
THAT DEFENDANTS PROPERLY RESPONDED TO
PLAINTIFF'S LANDLORD/TENANT COMPLAINTS**

Even if plaintiff could somehow overcome the above-described procedural bar, she still could not establish a disability discrimination claim under the ADA. The ADA requires a public entity to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the

service, program, or activity." *See Atia v. New York City Housing Authority*, 2002 WL 398812 at p. 3, f.n. 5 (E.D.N.Y. 2002) *citing* 28 C.F.R. § 35.130(b)(7).  The "central purpose of the ADA ... is to assure that disabled individuals receive 'evenhanded treatment' in relation to the able-bodied." *See Atia*, 2002 WL 398812 at p. 4 *citing Doe v. Pfrommer,* 148 F.3d 73, 83 (2d Cir. 1998).  Thus, "[t]he ADA requires only that a particular service provided to some not be denied to disabled people." *See Atia*, 2002 WL 398812 at p. 4 *citing Rodriguez v. City of N.Y.,* 197 F.3d 611, 618 (2d Cir. 1999); *Pfrommer,* 148 F.3d at 83.

The Record before the Court conclusively establishes that: defendant 319 Realty Services L.P. made a reasonable modification to its package delivery policy in order to accommodate tenants with disabilities, plaintiff cannot show that she was denied any services because of a disability, or that she was treated any differently than non-disabled tenants.

### 1.    Plaintiff's Allegations Regarding the Delivery of Packages

Plaintiff alleges that the Lantern Group discriminated against her by implementing a policy in which its security guards would not accept packages on behalf of building tenants. *See* Exh. A at ¶ 43.  A review of the policy reveals that it is facially evenhanded.  It follows that plaintiff admits that the policy was distributed not just to her, but to all tenants in the building. *See* Exh. D at pp. 31-32.

In sum, plaintiff contends that the Lantern Group's package delivery policy created an undue hardship for her, alleging that her physical condition prevents her from carrying her clothes home from the dry cleaners. *See* Exh. E at ¶ 40.  However, it is irrefutable that the Lantern Group fulfilled any responsibility to modify the policy within weeks of the plaintiff allegedly advising that she could not retrieve her own dry cleaning because of her physical condition.  In this regard, plaintiff admits that the Lantern Group expressly amended its policy in

writing, thereby allowing the building's security guards to accept delivery of packages on behalf of disabled tenants. *See* Exh. A at ¶ 78; Exh. E at p. 72, Exh. I.  The plaintiff received notice of the amended policy and the contents were effectively communicated to her. *Id*.

To the extent that plaintiff contends that she has had problems for "several weeks" with receiving deliveries since the enactment of the amended policy, the Lantern Group denies notice of any such problems prior to this lawsuit. *See* Exh. A at ¶ 47; Exh. D at ¶ 8.  However, any problems with deliveries must fall with the plaintiff's own failure to comply with the requirements of the amended policy.

The amended package delivery policy clearly provides that:  "The reception desk will accept personal deliveries (i.e. laundry, dry cleaning) to accommodate only tenants with physical disabilities." *See* Exh. I.  The package delivery policy further provides that "Tenants who desire the Reception Desk to accept packages must fill out and sign the attached Request for Package Delivery Form." *See* Exh. I.

Plaintiff admits that she did not fill out the required Package Delivery Assistance Form, which authorized the reception desk to accept deliveries on a tenant's behalf. *See* Exh. F at p. 218.  Notwithstanding the fact that plaintiff did not complete the appropriate paperwork needed to authorize the Lantern Group to accept packages on her behalf, once the policy exception was implemented, the security guards accepted packages on plaintiff's behalf. *See* Exh. D at ¶ 7. We note that the Lantern Group required all tenants to sign a Package Log when retrieving packages in order to acknowledge their receipt. *See* Exh. I.  Plaintiff, however, has repeatedly refused to sign the Package Log when retrieving her packages. *See* Exh. D at ¶8.

In sum, the Lantern Group made reasonable efforts to ensure that plaintiff received her packages, and plaintiff's disability discrimination claim cannot survive summary judgment.

2.    *Plaintiff's Allegations Regarding the Overall Condition of the Building*

Plaintiff further alleges that the manner in which the Lantern Group maintained the building was discriminatory. *See* Exh. A.  Yet, plaintiff acknowledged at her deposition that any of the perceived deficiencies in the maintenance and/or physical condition of the building affected all tenants, not just tenants with disabilities. *See* Exh. E at p. 182.

Plaintiff also acknowledged at her deposition that the Lantern Group generally completed all of her requests for repairs within two days of receipt of the requisite Work Order Form.  *See* Exh. E at pp. 112-13.  Thus, plaintiff's own testimony confirmed that the Lantern Group quickly rectified any perceived problems in the building which plaintiff reported.

While plaintiff seeks to create a cause of action on a claim styled "Elimination of Traditinal [sic] Services of Deratisation," her own complaint concedes that extermination services were available to all tenants but that she found the extermination process confusing and never took advantage of the service. *See* Exh. A at ¶ 77.  This type of refusal to take advantage of the options available to her, is typical of the landlord/tenant issues asserted in the complaint. In this regard, the ADA does not entitle a plaintiff to his/her preferred accommodation/modification, just one that is reasonable and does not impose a significant burden on the plaintiff. *See e.g. Ruhling v. Tribune Co.*, 2007 WL 28283 at p. 15 (E.D.N.Y. 2007).

Accordingly, to the extent that plaintiff alleges that the defendants somehow discriminated against her by keeping the building in a state of disrepair, plaintiff's own admissions defeat such a claim.

3.    *Plaintiff's Security Deposit*

Plaintiff further alleges that the Lantern Group's 2006/07 failure to provide her with a receipt acknowledging a September 1994 security deposit of $100 that plaintiff alleged to have paid to the building's previous owner constitutes discrimination. *See* Exh. A at ¶ 69-73. This argument is patently absurd.

The Lantern Group entities did not get involved with the subject building until March 2006, approximately twelve years after plaintiff allegedly provided the security deposit to the prior owner. *See* Exh. E at pp. 139-141. Plaintiff complains that in 2006/07, the Lantern Group issued a receipt for her monthly rental payment, but that the receipt did not acknowledge the 1994 security deposit. *See* Exh. A at ¶ 69-73.

While plaintiff alleges this omission was discriminatory, such a claim is hollow as demonstrated by her own deposition testimony. In this regard, plaintiff conceded that she has no evidence or knowledge of the Lantern Group having possession of any records during the relevant period which showed the security deposits paid to the previous owner of the building. *See* Exh. E at p. 143. In fact, plaintiff further acknowledged that, after she complained to the Lantern Group that her rental payment receipt did not reflect the 1994 security deposit, the Lantern Group conducted an investigation and ultimately notified plaintiff that they were able to confirm the payment to the prior owner some 13 years earlier. *See* Exh. E at p. 143.

Thus, the failure to immediately issue a receipt for a payment made to the building's previous owners in 1994 cannot constitute disability discrimination. Additionally, plaintiff also admitted that she knows of at least two tenants who are not disabled who also did not have their security deposits acknowledged on their rent receipt. *See* Exh. E at p. 143.

9

Since plaintiff cannot show that she was treated differently than non-disabled tenants, and because she concedes that the Lantern Group adequately addressed her complaints, plaintiff cannot establish her disability discrimination claims.

Based on all of the aforementioned, defendants respectfully submit that the Court must dismiss plaintiff's First Cause of Action as a matter of law.

<u>**POINT II**</u>

<u>**PLAINTIFF'S CIVIL RIGHTS CLAIMS MUST FAIL.**</u>

**A.    THE LANTERN GROUP IS NOT A STATE ACTOR**

Plaintiff also purports to assert a civil rights claim pursuant to 42 U.S.C. §1985 alleging that the Lantern Group conspired to deprive plaintiff of her civil rights.  In order to prove such a claim, plaintiff must show:  (1) a conspiracy existed, (2) for the purpose of depriving a person or class of persons of equal protection under the laws, (3) an act in furtherance of the conspiracy, (4) whereby a person is injured in his person or property or deprived of a right or privilege of a citizen.  *See Knight v. City of New York*, 303 F.Supp.2d 485, 501 (S.D.N.Y. 2004).

However, a §1985 conspiracy claim can only be brought against municipalities or private entities serving as state actors.  It is clear in the case at bar that the defendants are not municipalities.  In order to prove that a private entity is serving as a state actor, a plaintiff must show that the private entity and the state are so intertwined that the private entity could fairly be treated as the State itself.  A mere contracting relationship is insufficient.  *See Bueno v. City of New York*, 2007 WL 1062959 (E.D.N.Y. 2007).  As set forth in the preceding point, here plaintiff can proffer nothing more than her own unsupported speculation as to the potential provision of funding from the City of New York to the Lantern Group.  *See* Exh. E at pp. 37-38.  This is insufficient for the purpose sought.

Although the Lantern Group seeks to provide housing to the homeless or persons with special needs, defendants are neither an arm nor agency of the City.  It follows that plaintiff's complaint is devoid of an allegation to the contrary.  *See* Exh. A.

To the extent that plaintiff's conspiracy claim refers to a claim under 42 U.S.C. § 1982 (*see* Exh. A at ¶ 170), that statute does not permit a claim based on discrimination on the basis of

11

national origin as alleged in the plaintiff's Second Cause of Action. *See Yisrael v. Per Scholas, Inc.*, 2004 WL 744485 (S.D.N.Y. 2004) *citing Jones v. Alfred Mayer*, 392 U.S. 409, 413 (1968) (stating that 42 U.S.C. § 1982 "deals only with racial discrimination and does not address itself to discrimination on grounds of religion or national origin.").

Accordingly, plaintiff cannot state a claim under 42 U.S.C. § 1985.

## B.    PLAINTIFF'S CONSPIRACY CLAIM FAILS ON THE MERITS

Assuming, *arguendo*, that plaintiff's conspiracy claim could survive the complete procedural bar described in the preceding section, plaintiff can still not establish a conspiracy claim under Section 1985.

In order to prove her conspiracy claim, plaintiff must show that some meeting of the minds took place at which the defendants agreed to work together to violate her civil rights. *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) *citing Romer v. Morgenthau*, 119 F.Supp.2d 346, 363 (S.D.N.Y. 2000). In *Webb*, the Second Circuit dismissed a plaintiff's conspiracy claim where, as here, "the plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants." *See Webb v. Goord*, 340 F.3d at 111 *citing Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).

Here, plaintiff's allegations contradict the very notion of a conspiracy. For example, plaintiff alleges that the Lantern Group created an exception to their package delivery policy in order to provide assistance to her and other disabled tenants, but some security guards were unaware of the exception and rejected her packages. *See* E at p. 58. The notion that individuals trying to help plaintiff and individuals unaware of efforts to help plaintiff are somehow acting in

concert with each other simply defies logic. Indeed, plaintiff admits that she is not aware of whether any of the employees of the Lantern Group whom she claims discriminated against her even communicate with one another. *See* Exh. E, pp. 155, 218-219. There are no allegations that the City played any role in the alleged conspiracy.

Further, plaintiff cannot prove a conspiracy claim where all the individuals alleged to have participated in the conspiracy are "employees of the same institutional defendant." *See Alfaro v. City of New York*, 2007 WL 258173 at p. 7 (S.D.N.Y. 2007) *citing Nat'l Congress for Puerto Rican Rights v. City of New York*, 75 F.Supp.2d 154, 168 (S.D.N.Y. 1999). Here, plaintiff does not allege that any organization other than the Lantern Group participated in the alleged conspiracy to deprive her of her civil rights. As such, her conspiracy claim must fail as a matter of law.

In addition, even if plaintiff could somehow demonstrate an agreement to deprive her of her civil rights, plaintiff cannot actually show that she was deprived of any protected rights. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution "is essentially a direction that all persons similarly situated should be treated alike." *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) *citing Plyler v. Doe,* 457 U.S. 202, 216 (1982). To prevail on an Equal Protection claim, a plaintiff must establish that: (1) he/she was selectively treated compared with others similarly situated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *See e.g., Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995).

Plaintiff cannot demonstrate that she was discriminated against on the basis of her age or

national origin. In fact, plaintiff cannot identify a single similarly situated individual who was treated differently than herself. Indeed, plaintiff admits that the general conditions of the building affected all tenants, regardless of their national origin, disability or age. *See* Exh. E at p. 182. The policies that plaintiff complains of were applied equally to all tenants as well. *See* Exh. E at p. 31-32. In fact, plaintiff even alleges that the Lantern Group instituted some policies that negatively affected other tenants, but not her. *See* Exh. E at p. 175.

To the extent that plaintiff alleges that she was treated differently on account of her age, this claim must fail. The mere assertion of discriminatory motivation is insufficient to defeat a motion for summary judgment. *See Alfaro, supra*, 2007 WL 258173 at p. 7. In support of her claim, plaintiff can do no more than cite to two occasions in which a security guard allegedly told her that she should go to a nursing home. *See* Exh. F at p. 242. Even if uttered, these statements are insufficient to support an inference that the Lantern Group engaged in concerted action to deprive plaintiff of her civil rights on the basis of her age. *See Alfaro, supra*, 2007 WL 258173 at p. 7 (summary judgment granted where only evidence of racial animus is that defendants used a handful of racial epithets to describe plaintiff).

Plaintiff's national origin discrimination must fail for the same reasons. At her deposition, plaintiff could cite to only one instance in which Felix DeJesus, Resident Coordinator for the Lantern Group, and Jose, a porter, made fun of her French accent. *See* Exh. E at p. 80. She also cited an instance in which Jose told her to go back to her own country and never come back. *See* Exh. E at p. 168. As noted above, these claims are insufficient to support an inference that the Lantern Group engaged in a concerted action to deprive plaintiff of her civil rights on the basis of her national origin. *See Alfaro*, 2007 WL 258173 at p . 7.

Based on all of the aforementioned, defendants respectfully submit that the Court must dismiss plaintiff's Second Cause of Action as a matter of law.

## POINT III

### PLAINTIFF CANNOT ESTABLISH HER FRAUD CLAIM.

In order to establish her fraud claim, plaintiff must show that (1) the defendant made a material misrepresentation, (2) that defendant intended to defraud plaintiff, (3) that plaintiff reasonably relied on the misrepresentation, (4) that the plaintiff suffered damage as a result of the misrepresentation. *See Thompson v. Midland Marine Bank*, 198 F.3d 235 (2d Cir. 1999). It is well-settled law that "[a]llegations that are conclusory or unsupported by factual assertions are insufficient." *See Hunt v. Enzo Biochem, Inc.*, 530 F.Supp.2d 580, 593 (S.D.N.Y. 2008) *quoting ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

Plaintiff alleges that the Lantern Group made intentionally false statements about their redevelopment plan for the 319 West 94th Street building. The Complaint alleges that the Lantern Group misled her into believing that the proposed renovation would result in her room being converted into a studio apartment. *See* Exh. A at ¶ 173. Plaintiff expanded on this allegation at her deposition when she testified that the Lantern Group told the tenants that they planned to renovate the building, but then she saw new "Mexicans" moving into the building. *See* Exh. E at p. 284-85. Plaintiff felt the Lantern Group would not have allowed these "Mexicans" to move into the building if they only planned to renovate it. *See* Exh. E at p. 285. Ironically, it is plaintiff who is alleging national origin discrimination in this case.

In any event, there has been no such material misrepresentation upon which to form a claim. To the contrary, the Lantern Group's architect submitted plans to the New York City Department of Buildings for the renovation of the 319 West 94th Street building. *See* Exh. D at ¶10. The City has approved the renovation plans, however, the renovation cannot proceed because plaintiff, along with several other neighborhood residents, has commenced an Article 78

16

petition in the New York County Supreme Court, seeking to stop the building renovation. *See* Exh. D at p. 7-8; Exh. J.

As such, it is untenable for plaintiff to now claim that the Lantern Group deceived her into thinking that it would renovate the building when, in fact, it is plaintiff's own lawsuit that is presently preventing the renovation process from going forward. The evidence before the Court shows that the Lantern Group fully intended to renovate the building, but that plaintiff's state court petition prevented it from doing so. As such, there was no material misrepresentation or any intent to defraud and plaintiff's fraud claim must thus be dismissed.

Moreover, even if plaintiff could demonstrate that the Lantern Group intentionally deceived her, she cannot demonstrate that she reasonably relied on this alleged misrepresentation. As a petitioner in the state court action, the status and details of the proposed renovations have clearly been readily available to her and are also a matter of public record. Thus, to the extent that plaintiff claims that she relied on the Lantern Group's "promise" to proceed with renovations, such reliance was not reasonable. *See Banque Arabe et Internationale D'Invetissement v. Maryland Nat. Bank*, 57 F.3d 146, 156 (2d Cir. 1995) (reliance not reasonable where necessary information was readily available to plaintiff).

Further, plaintiff cannot demonstrate that she was injured by the alleged reliance. Plaintiff testified that because she believed that the building would be renovated nicely, she did not look for another apartment. *See* Exh. F at p. 287-88. Plaintiff indicated that because of her disability, she can only live in Manhattan, but would not consider living in either the Harlem or Washington Heights sections of Manhattan. *See* Exh. F at p. 289. She further testified that she can only afford to pay the $500 per month rent that she is paying now, and does not believe that she can find another apartment in Manhattan (excluding Harlem or Washington Heights) that

17

rents for $500 per month. _See_ Exh. F at p. 287-89. Plaintiff admits that, even if she had started looking for an apartment when she first became aware that the Lantern Group took ownership of the building, she does not know if she would have been able to find a studio apartment in Manhattan for $500 per month or less. _See_ Exh. F at p. 289. Absent a showing that she would have found a Manhattan apartment for $500 per month had she looked in March 2006, plaintiff cannot demonstrate an economic injury. _See Kaye v. Grossman_, 202 F.3d 611, 615 (2d Cir. 2000). Since plaintiff cannot prove that she suffered an economic injury, her fraud claim must be dismissed. _See Kaye_, 202 F.3d at 615.

Based on all of the aforementioned, defendants respectfully submit that the Court must dismiss plaintiff's Third Cause of Action as a matter of law.

## POINT IV

### THE DEFENDANTS DID NOT VIOLATE NYC ADMIN. CODE § 27-198.

Under New York City Administrative Code §27-198, the Commissioner of Housing Preservation and Development may not approve plans to renovate a single room occupancy multiple dwelling unless the proponent of the plans submits a sworn statement certifying that none of the lawful residents have been harassed or has established that it is entitled to a waiver of this requirement. *See* NYC Admin. Code §27-198. However, non-profit organizations which have tax-exempt status under New York State law are exempt from this requirement. *See* NYC Admin. Code §27-198 (a) (7); *see also* Exh. F, pp. 292-93.

Here, plaintiff admits that the defendants are non-profit corporations. *See* Exh. E, p. 39. Although the Lantern Group temporarily lost its federal non-profit status due to a clerical error in their tax returns, but its federal status has since been restored. *See* Exh. D at ¶3. More importantly, the Lantern Group never lost its New York State non-profit status and, thus, was never required to file a certificate of non-harassment pursuant to NYC Admin. Code §27-198. *See* Exh. D at ¶4.

Plaintiff herself admitted that the Lantern Group's non-profit status exempts it from the application of NYC Admin. Code §27-198. *See* Exh. F at p. 291. Since plaintiff herself admits that the requirements of NYC Admin. Code §27-198 do not apply to the Lantern Group, she cannot prove that a violation of this statute occurred.

Based on all of the aforementioned, defendants respectfully submit that the Court must dismiss plaintiff's Fourth Cause of Action as a matter of law.

## POINT V

### PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF IS DUPLICATIVE OF HER STATE COURT PETITION

A federal court has the authority to dismiss a case when it is shown that the claim is duplicative of another action pending before another court. *See Curtis v. DiMayo*, 46 F.Supp.2d 206, 215 (E.D.N.Y. 1999) *citing Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). Indeed, a defendant may rely on an "other suit pending" defense where the other pending suit has the same parties, where the same relief is being sought and where the claim is based on the same facts. *See Curtis*, 46 F.Supp.2d at 215 *citing Watson v. Jones*, 80 U.S. 679 (1871).

Here, plaintiff has filed a suit against The Lantern Group, 319 Realty Services L.P. and St. Louis L.P. alleging that she is entitled to injunctive relief blocking the redevelopment of the building due to the Lantern Group's failure to minimize the hardships that she suffered as a result of its plans to renovate the building. *See*. Exh. A. Yet plaintiff has wholly failed to apprise the Court that she has also almost simultaneously commenced an Article 78 proceeding (in which the Lantern Group, 319 Realty Services L.P. and St. Louis L.P. are named as respondents) alleging that the variance issued by the New York City Department of Buildings to the Lantern Group should be revoked because the Lantern Group and the Department of Buildings did not consider the hardship that the renovations would cause her and her co-petitioners. *See* Exh. J.

Since both of plaintiff's actions involve both her and the instant defendants, and because both actions are seeking the same relief based upon the same set of facts, plaintiff's claim for injunctive relief in this federal action must be dismissed.

Moreover, the Article 78 proceeding in Supreme Court, New York County, is a more appropriate vehicle for plaintiff to obtain the relief that is being sought. In her Article 78 proceeding, plaintiff seeks a reversal of the New York City Department of Building's grant of a

zoning variance to the Lantern Group, which would effectively stop the renovation from taking place. Here, she seeks to stop the renovation from taking place by means of a request that the Court invalidate contracts between the Lantern Group and 319 West LLC, and between Capital Resources and 319 West LLC, despite the fact that she does not have standing to make such a request. *See Tasini v. New York Times Co., Inc.*, 184 F.Supp.2d 350, 356 (S.D.N.Y. 2002) (summary judgment granted where plaintiff challenged a contract to which he was not a party).

Based on all of the aforementioned, defendants respectfully submit that the Court must dismiss plaintiff's Fifth Cause of Action as a matter of law.

## POINT VI

### ABSENT ANY ALLEGATIONS AGAINST ST. LOUIS L.P. AND 319 REALTY SERVICES, L.P., THE CLAIMS AGAINST THEM SHOULD BE DISMISSED

Plaintiff's complaint makes absolutely no allegations against St. Louis L.P. or 319 Realty Services, L.P. Instead, she refers to the defendants all collectively as "The Lantern Group." *See* Exh. A. Since plaintiff has not made alleged any wrongdoing by St. Louis L.P. or 319 Realty Services L.P., the claims against them should be dismissed.

## POINT VII

### IN THE ABSENCE OF FEDERAL CLAIMS, THIS COURT SHOULD REFRAIN FROM EXERCISING ITS PENDENT JURISDICTION.

"In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998). As discussed above, plaintiff's federal claims fail as a matter of law. Since the state law claims are before this Court solely under the supplemental jurisdiction provided by 28 U.S.C. § 1367, to the extent that the Court liberally construes the allegations and does not dismiss the state law claims on substantive grounds, the state law claims should be dismissed in absence of viable federal claims.

<u>CONCLUSION</u>

For all of the foregoing reasons, defendants Lantern Group, St. Louis L.P. s/h/a St. Louis

Hall L.P. and 319 Realty Services L.P. s/h/a 319 Realty Services L.L.P. respectfully request that

this Court grant summary judgment in their favor, thereby dismissing this action in its entirety,

and awarding defendants costs and such other relief as this Court may deem just, proper and

equitable.

Dated: Mineola, New York
      September 5, 2008

                       MIRANDA SOKOLOFF SAMBURSKY
                       SLONE VERVENIOTIS LLP
                       Attorneys for the Defendants
                       THE LANTERN GROUP, INC., ST. LOUIS L.P.
                       and 319 REALTY SERVICES, LP

                       Adam I. Kleinberg (AIK-0468)
                       Melissa Holtzer (MH-6636)
                       The Esposito Building
                       240 Mineola Boulevard
                       Mineola, New York 11501
                       (516) 741-7676
                       Our File No.: 07-636

TO:    ROLANDE CUTNER, ESQ.
       60 Broad Street, 35th Floor
       New York, New York 10004
       (212) 847-2389